49659. SASSER & COMPANY v. GRIFFIN et al.
49660. SANFORD CONSTRUCTION COMPANY et al. v. SASSER & COMPANY et al.

EBERHARDT, Presiding Judge.
Plaintiff, a subcontractor, brought this action against Sanford and Space, the prime contractor, seeking payment under the subcontract, and against the owners of property on which Sanford and Space constructed a high-rise apartment building, seeking the establishment of a lien thereon. From a denial of plaintiff's motion for summary judgment, plaintiff appeals on a certificate of review (Case 49659). By cross appeal Sanford and Space assert errors as to the trial court's disposition of various other motions made during the proceedings below (Case 49660).
Plaintiff contends it is entitled to a summary judgment or at least a partial summary judgment in the amounts of $29,749.59 (for one contract) and $1,500 (for a second contract). The pleadings, affidavits and interrogatories show that the owners of certain property in Savannah, Georgia contracted with Sanford and Space for the construction of a high-rise apartment building. Sanford and Space in turn entered into two subcontracts

with plaintiff to install the plumbing and heating systems and the air conditioning units for the building. The entire project was to be completed by April 1, 1971, according to the prime contract to which plaintiff bound itself. Plaintiff did not complete performance until July, 1971 and there is evidence that plaintiff performed additional work on the project in August, 1971.

Both subcontracts provided that plaintiff was to be paid by Sanford and Space "as the work progresses, based on estimates and certificates of the architects or contractor and payments will be made *from money received from the owner only and divided pro rata amount* [sic] *all approved accounts of subcontractors labor and material.*" (Emphasis supplied.) This provision was amended in the plumbing and heating contract in that the italicized words were stricken and there was substituted "[b]y 20th of each month following, less 10% retained until completion of job. Subcontractor will be paid by contractor for approved work in place even though payment by the owner has been withheld from contractor for reasons not the fault of the subcontractor." The air conditioning subcontract was not so amended but does contain this added provision: "Payment within 10 days of receiving money from owner — approximately 20th of the month."

In July, 1971, the designing architect certified that the project was substantially complete and directed the owners to pay to Sanford and Space all retainage under the contract on work completed by that time. The owners claim they have paid Sanford and Space all monies due them under the contract, though they deny approval of the project. (The owners and Sanford and Space are presently involved in litigation in Chatham Superior Court). In August, 1971, the owner's lessee Housing Authority began occupying the building. On October 29, 1971, the plaintiff filed for record a materialman's claim of lien for $29,516.06 on the plumbing and heating subcontract and $1,500 on the air conditioning sub-contract. *Held:*

1. Under Ga. L. 1967, p. 456 (Code Ann. § 67-2002 (2)), the recording of a materialman's lien must be within three months after the last material is furnished to the

construction project. Even though the project was certified as being substantially complete on July 29, the plaintiff has submitted affidavits and invoices showing equipment and labor were furnished to the project on July 30, August 2 and August 4, all within three months of filing on October 29. None of the three owners has submitted any evidence in rebuttal, but rest on the denials of timely filing in their answers. "When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this section must set forth specific facts showing that there is a genuine issue for trial." Civil Practice Act § 56 (e) (Code Ann. § 81A-156). There being no genuine issue of fact as to plaintiff's establishment of a materialman's lien in the amounts alleged, it was error not to grant plaintiff's motion for summary judgment for that purpose against defendants Joseph Griffin, Jr., and Chatham-Savannah. As to lessee, Housing Authority, as an original proposition, Ga. L. 1937, pp. 210, 229; 1939, p. 124 (Code Ann. § 99-1130) may exempt it from a "lien upon its real property," but in leasing the property it took subject to any lien rights of which it may have had actual notice. *Oglethorpe Sav. & Trust Co. v. Morgan,* 149 Ga. 787 (1) (102 SE 528). An estate for years may be subjected to the lien. *James G. Wilson Mfg. Co. v. Chamberlin-Johnson-Dubose Co.,* 140 Ga. 593 (79 SE 465). Here a factual issue remains.

None of the owners has a contractual liability, jointly or otherwise, to plaintiff since they were not parties to the subcontracts between plaintiff and Sanford and Space, but this does not prevent the establishment of a lien by a subcontractor under Code Ann. § 67-2001 (2). See *Stein Steel & Supply Co. v. Goode Const. Co.,* 83 Ga. App. 821 (65 SE2d 183).

2. Sanford and Space and their surety, defendant Travelers Indemnity Company, have defended against plaintiff's action on the contract on two grounds: (a) payment by owners to Sanford and Space was a condition precedent to latter's liability to plaintiff under the terms of both subcontracts, and owners had not paid all sums

due under the prime contract; and, (b) plaintiff had breached the subcontract by not completing performance by the time required in the prime contract.

The owners and Sanford and Space cross claimed against each other in the event either should be found liable to plaintiff. Other defenses and motions proffered by Sanford and Space will be treated below in Division 3 dealing with its cross appeal.

(a) The language in the amendment of the plumbing and heating subcontract clearly shows that the parties intended for plaintiff to be paid independently of payments received from the owners by Sanford and Space. While the owners deny approval of the entire project, they do not dispute that plaintiff has completed his performance under the subcontract. That contract is to be enforced as written. "It is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties." *Carr v. L. & N. R. Co.,* 141 Ga. 219, 222 (80 SE 716); *Gray v. Akin,* 205 Ga. 649, 652 (54 SE2d 587). We are not at liberty to revise a contract while professing to construe it. *Reynolds v. Tufts,* 123 Ga. App. 147, 149 (179 SE2d 652).

There is, however, no such amendment to the air conditioning subcontract, and it provides "payments will be made from money received from the owner only" and "payment within 10 days of receiving money from owner — approximately 20th of the month."

A provision in a contract may make payment by the owner a condition precedent to a subcontractor's right to payment if "the contract between the general contractor and the subcontractor should contain an express condition clearly showing that to be the intention of the parties." Thomas J. Dyer & Co. v. Bishop Internat. Engineering Co., 303 F2d 655, 661. The condition is clearly expressed in this subcontract. See dictum in *Peacock Const. Co. v. West,* 111 Ga. App. 604 (142 SE2d 332). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code § 20-702.

(b) Sanford and Space cannot successfully defend their nonpayment of plaintiff on the ground that plaintiff breached the contract by not completing his work in time. Late performance may constitute a breach of contract by the plaintiff, but the remedy for the breach is not nonpayment; it is recoupment (formerly under Code §§ 20-1311 and 20-1314) or what is now a counterclaim under CPA § 13 (Code Ann. § 81A-113). "And, while it is true that, on the acceptance of the work by the owner after the building contractor has rendered the entire service for which he has contracted, the contractor is authorized to proceed to collect the balance due him by the terms of the contract, any damage to the owner resulting through the negligent performance of the contract by the contractor is a matter for recoupment." *Allied Enterprises v. Brooks,* 93 Ga. App. 832 (1) (93 SE2d 392). This same rule applies to actions ex contractu, between contractor and subcontractor, see, e.g., *Bettis v. Comfort Control* 115 Ga. App. 104 (153 SE2d 678), and for damages alleged to have been caused by delay in completion of construction. See, e.g., *Blount v. Kicklighter,* 125 Ga. App. 159 (1) (186 SE2d 543). Sanford and Space did attempt to file a counterclaim against plaintiff but it was disallowed as not being timely filed (see Headnote 3 (c) below).

The liability of defendant Travelers, who is jointly and severally liable with Sanford and Space under the payment and performance bond, and who pled in the same manner and substance as Sanford and Space, is the same.

Therefore plaintiff's motion for summary judgment should have been granted against Griffin and Chatham-Savannah as to the establishment of the lien, in the amount claimed, and against Sanford and Space as to payment due under the plumbing and heating subcontract. However, the cross claims of the owners against Sanford and Space and vice versa remain and the case is remanded for their determination.

3. Sanford and Space, on their cross appeal, enumerate five errors committed by the trial court in: (a) granting plaintiff's motion to add affidavits in support of his motion for summary judgment, (b) denying its and

other defendant's motion for summary judgment against plaintiff, (c) denying its motion to amend its answer for the purpose of setting up counterclaims against plaintiff, (d) granting plaintiff's motion to strike its second amended answer and (e) granting plaintiff's motion to strike its second defense of its answer.

(a) The record shows that the additional affidavits were offered by plaintiff on the second day of the summary judgment hearing, and were in opposition to defendant owner's cross motion for summary judgment. The CPA § 56 (c) (Code Ann. § 81A-156 (c)) provides that "The adverse party prior to the day of hearing may serve opposing affidavits." Sanford and Space contend that to allow these affidavits after the hearing had commenced was in violation of this section.

CPA § 6 (d) (Code Ann. § 81A-106 (d)) provides that "When a motion is supported by affidavit, the affidavit shall be served with the motion; and opposing affidavits may be served not later than one day before the hearing, unless the court permits them to be served at some other time." Sections 56 (c) and 6 (d) of the CPA should be read together so as to vest in the court the discretion to permit opposing affidavits "to be served at some other time." 6 Moore's Federal Practice 2256, § 56.14[1] (2d Ed. 1953); *Johnson v. Frazier,* 121 Ga. App. 212 (173 SE2d 434). We have held that "unless accompanied by something in the record, such as an order of court, showing that the court has exercised its discretion and allowed the affidavit to be served," it cannot be considered as evidence at the hearing. *Malone v. Ottinger,* 118 Ga. App. 778, 782 (165 SE2d 660). Here the court has, by order on the record, shown the exercise of its discretion in allowing the additional affidavits and we find no abuse of that discretion. *T & W Farm Supply v. McCall,* 132 Ga. App. 613.

(b) Whether or not Sanford and Space joined the other defendants in their cross motion for summary judgment, the record does not show that a certificate of review was obtained from the trial court as required by CPA § 56(h) (Code Ann. § 81A-156 (h)). *Carroll v. Campbell,* 226 Ga. 700 (177 SE2d 83); *Campbell v. Carroll,* 121 Ga. App. 497 (174 SE2d 375). This enumeration is not subject

to review.

(c) and (d)  Sanford and Space's counterclaim was within its second amended answer, so these enumerations will be considered together. The counterclaim sought to pass on to plaintiff any liability of Sanford and Space resulting from their separate lawsuit with the owners. However, the motion for leave to set up the counterclaim was not filed until March 5, 1974, a year and one-half after it had filed its answer. Sanford and Space assert that the reason for delay was that "the exact nature of the allegations and complaint in [the owner's lawsuit against them] did not crystallize and become apparent to defendants until the said action was proceeding to arbitration after extensive discovery, to-wit, in late January, 1974."

"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." CPA § 13 (f) (Code Ann. § 81A-113 (f)). What is excusable neglect depends on whether or not "the defendant or his counsel had knowledge of the existence of the claim when the defensive pleadings were prepared and filed in the first instance," and "whether, under the facts, there has been unreasonable or inexcusable delay in the tendering of the amendment." *Blount v. Kicklighter,* 125 Ga. App. 159, 161, 163, supra.

The owners filed their complaint against Sanford and Space on June 30, 1972. They filed an answer and counterclaim against the owners on July 19, 1972. The subject matter of their lawsuit was, inter alia, damage to the owners caused by delay in completion of the project — the same subject matter Sanford and Space now attempt to assert against the plaintiff here. It is abundantly clear from the record that Sanford and Space knew of the grounds for counterclaim when they filed their answer in September, 1972. There being no reason or excuse for delay, we find the trial court's rulings in this regard proper. *Baitcher v. Clerico Associates,* 132 Ga. App. 219 (1) (207 SE2d 698).

(e)  Sanford and Space's "second defense," which was stricken on plaintiff's motion, attempted to assert the

defense that plaintiff's failure to submit his claim to arbitration, as required by the contract, was failure of a condition precedent to the contract. The record shows that the plaintiff alleged in his complaint, dated July 27, 1972, that all conditions precedent in the contract had been met. Sanford and Space answered on September 29, 1972, denying this allegation, generally. Plaintiff moved for summary judgment on October 18, 1973. Sanford and Space sought to insert this defense on January 2, 1974, just two days prior to the hearing for summary judgment.

CPA § 9 (c) (Code Ann. § 81A-109 (c)) requires that "A denial of performance or occurrence [of conditions precedent] shall be made specifically and with particularity." Sandford and Space's original answer did not meet this requirement. However, under CPA § 15 (a) (Code Ann. § 81A-115 (a)), "A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pre-trial order." The right to amend pleadings under the CPA has been interpreted to be a broad right. *McDonald v. Rogers,* 229 Ga. 369 (7) (191 SE2d 844). See e.g., *Atlanta Newspapers v. Shaw,* 123 Ga. App. 848 (182 SE2d 683); *Rushing v. Ellis,* 124 Ga. App. 621 (184 SE2d 667). While bringing in this affirmative defense 15 months after the original answer was filed is not beneficial to the orderly disposition of the case, it is nevertheless permitted under the Act.

The pertinent portion of the arbitration clause states: "If any question shall arise concerning the work under this Contract or concerning the settlement of account in connection therewith, settlement shall be by reference to a Board of Arbitration . . ." We have held that "[A]ccording to numerous decisions a general agreement to arbitrate *all questions* which may arise in the execution of a contract, both as to liability and loss, should be treated as against public policy and void, as an attempt to oust the courts of jurisdiction." *State Highway Dept. v. MacDougald Const. Co.,* 189 Ga. 490, 504 (6 SE2d 570). In *Wright v. Cecil A. Mason Const. Co.,* 115 Ga. App. 729 (155 SE2d 725) this court construed a provision that "Any disagreement arising out of this contract or from the breach thereof shall be submitted to arbitration. . ."

to be void and unenforceable. Likewise the provision that the decision of a designated person would be final "in connection with any dispute whatsoever which may arise in connection with this agreement" was found void as against public policy. *Gettys v. Mack Trucks,* 107 Ga. App. 694 (131 SE2d 205). In order to be a condition precedent to the right to sue on the contract the arbitration clause therein must concern only "certain question or questions" and "not all the questions arising thereunder." See *Southern Mutual Ins. Co. v. Turnley,* 100 Ga. 296, 301 (27 SE 975). Furthermore, if the parties wish to bind themselves to arbitration, they must do so explicitly because, in making arbitration their exclusive remedy, they are depriving themselves of access to the protection of the judicial system. *Adams v. Haigler,* 123 Ga. 659 (51 SE 638). It has therefore been held that "Unless the agreement provides that the parties shall arbitrate their differences *as a condition precedent* to a right to sue, a party may resort to the courts to settle a dispute." *Millican Electric Co. v. Fisher,* 102 Ga. App. 309, 311 (116 SE2d 311). (Emphasis supplied.) See also *Adams v. Haigler,* 123 Ga. 659, supra; *Liverpool, London &c. Co. v. Creighton,* 51 Ga. 95. The arbitration clause in this contract does not state that arbitration is a condition precedent to the parties' right to sue.

We find no errors in the enumerations of Sanford and Space's cross appeal and affirm those respective trial court rulings.

*Judgment on main appeal affirmed in part, reversed in part; affirmed on cross appeal. Deen and Stolz, JJ., concur.*

Argued September 6, 1974 — Decided October 21, 1974.

*Stokes, Boyd & Shapiro, Larry S. McReynolds,* for Sasser & Co.

*Smith & Portman, Spencer Lawton, Jr., Barnard M. Portman,* for Sanford.

*Malberry Smith, Jr.,* for Griffin.