## 31055. CCC BUILDERS, INC. v. CITY COUNCIL OF AUGUSTA et al.

HILL, Justice.

CCC Builders, Inc., sought a writ of mandamus to enforce an arbitration clause in a contract between CCC Builders and the City Council of Augusta and its members. The Richmond Superior Court granted the defendant's motion to dismiss.

CCC Builders, Inc., entered into a contract with the City Council of Augusta (hereafter the owner or city) on August 7, 1972, whereby the contractor was to construct a wastewater treatment plant for the owner pursuant to certain plans and specifications. The contract provided for monthly progress payments based upon approved estimates less 10% retainage. It also provided for the assessment of liquidated damages of five hundred dollars ($500) per day if the work was not completed within the prescribed time. The contract also included an arbitration clause: "Both parties of this Contract agree that as conditions precedent to the filing of an action in any court involving the amount or rate of payment or settlement for work performed by the Contractor under these Contract Documents, and as a condition precedent to the liability of the Owner for any amount other than contained in the estimates approved by the Engineer, any question at issue involving the amount of [sic] rate of settlement or liability of the Owner for an amount other than as shown by the estimates approved by the Engineer, shall be referred to arbitration for decision and award. The arbitrator or board of arbitration shall have the authority only to pass upon questions involving compensation to the Contractor for work actually performed but not allowed by the Engineer, and its authority shall not extend to the interpretation of the plans and specifications or the determination of the qualities of materials or workmanship furnished, nor shall it have authority to set aside or modify the terms or requirements of the contract."[1]

---

[1] The first sentence of the arbitration provision provides, after two conditions precedent, the scope of

After construction was completed, the owner withheld payment of $231,000 as liquidated damages for delay. It also withheld payment of $5,116.15 for repair of a chain link belt which the owner contends was improperly installed and which the contractor contends was improperly used by the owner. The contractor notified the owner that it was submitting the assessment of liquidated damages to arbitration and named an arbitrator. The city engineer responded by naming an arbitrator and the two arbitrators selected a third. At this point the owner notified the contractor that, in its opinion, the arbitration clause in the contract did not include questions involving assessments of liquidated damages and therefore it would not go forward with arbitration.

The contractor filed a complaint in mandamus to compel the owner to submit both issues to arbitration. On motion the trial court dismissed the complaint.

The issue before us is whether this action will lie to enforce this arbitration clause as to the two matters in dispute.

The contractor begins by arguing that arbitration is enforceable by mandamus. He then urges that the contract and the construction thereunder were transactions in interstate commerce within the meaning of the Federal Arbitration Statute (9 USC § 1 et seq.), that under the federal statute a written agreement to submit a controversy to arbitration is valid, irrevocable and enforceable, and that Georgia law and policy must in such a case yield to federal law. The contractor contends that the controversies in issue here are squarely within the scope of the arbitration clause, particularly since arbitration clauses under the federal statute are to be construed liberally in favor of coverage and since in this case the owner drew the contract. Finally, the contractor urges that the owner waived his right to object to arbitration because the city engineer had begun the

---

arbitration; the second sentence provides limitations. To the extent that the scope of arbitration is greater than the limitations, the scope prevails for the reasons hereinafter stated.

arbitration process by selecting an arbitrator.

An action is maintainable to compel a municipality to perform its contractual obligations, either by mandamus (*Wilson v. Strange,* 235 Ga. 156 (219 SE2d 88) (1975); *Housing Authority of City of Carrollton v. Ayers,* 211 Ga. 728 (88 SE2d 368) (1955)), or specific performance (see Destructor Co. v. City of Atlanta, 232 F 746 (N.D.Ga. 1916)).

The city urges that an action on the contract for damages could be brought; thus another remedy is available, and this suit will not lie. The contractor is not seeking to compel the owner to pay money, but rather is seeking to require the owner to submit to arbitration. That remedy is not available in an action for damages. We therefore find that the action is maintainable against the city.

We must next turn to the subject of arbitration. A broad arbitration clause stating that any disagreement arising with reference to the contract shall be referred to arbitration is not enforceable under state law. *Rockdale County v. City of Conyers,* 231 Ga. 477 (4) (202 SE2d 436) (1973); *Sasser & Co. v. Griffin,* 133 Ga. App. 83 (210 SE2d 34) (1974); *Wright v. Cecil A. Mason Const. Co.,* 115 Ga. App. 729 (155 SE2d 725) (1967). Such a clause is against public policy and is void as an attempt to oust the courts of jurisdiction.

However, under state law an arbitration provision that limits its applicability to questions such as the amount of loss or damage and requires arbitration as a condition precedent to a right of action upon the contract itself will be enforced. See *Southern Mutual Ins. Co. v. Turnley,* 100 Ga. 296 (3) (27 SE 975) (1897); *Sasser & Co. v. Griffin,* 133 Ga. App. 83 (3e) (210 SE2d 34) (1974); *Wright v. Cecil A. Mason Const. Co.,* 115 Ga. App. 729 (1) (155 SE2d 725) (1967).

Under the Federal Arbitration Statute (9 USC § 1 et seq.) a broad arbitration provision (invalid under state law) in a contract involving interstate commerce is valid, irrevocable and enforceable. 9 USC § 2; *West Point-Pepperell v. Multi-Line Industries,* 231 Ga. 329 (201 SE2d 452) (1973). The Federal Arbitration Act was intended to avoid the common law rule that an agreement

between parties to settle any dispute between them by arbitration is against public policy and void as an effort to oust the courts of jurisdiction. Standard Magnesium Corp. v. Fuchs, 251 F2d 455 (10th Cir. 1957); *West Point-Pepperell v. Multi-Line Industries,* supra. "Where such a transaction involves commerce, within the meaning of the Federal Arbitration Statute, the state law and policy with respect thereto must yield to the paramount federal law. American Airlines, Inc. v. Louisville &c. Air Board, 269 F2d 811 [6th Cir. 1959]." *West Point-Pepperell v. Multi-Line Industries,* supra, p. 331.

The contractor's complaint alleges the conclusion, and facts tending to show, that the contract here in issue involved interstate commerce. Hence it cannot be determined on motion to dismiss whether the Federal Arbitration Act is applicable and we assume for purpose of decision that it is. Moreover, the clause is equally enforceable under state law according to the principles stated above. The arbitration provision here states that arbitration is a condition "precedent to the filing of an action in any court involving the amount or rate of payment or settlement for work performed" and defines and limits the scope of arbitration. In fact the provision for arbitration found in *State Hwy. Dept. v. Wright Contracting Co.,* 107 Ga. App. 758 (131 SE2d 808) (1973), is almost identical. In *Wright Contracting Co.* the court held that the extra work which was the subject of the controversy was a legal question and therefore not within the scope of the arbitration clause, but implicitly the court held that the arbitration clause was valid and enforceable. The court also held that the clause was to be construed against the owner which drew the contract.

Having determined that this arbitration clause is enforceable, the remaining question is whether the two issues raised in this case are within the scope of the clause.

The main dispute concerns the assessment of liquidated damages. The contractor argues that it was entitled to an extension of time and if the extension were granted, it would not be assessed liquidated damages. It contends that all of this involves "settlement for work performed" and "compensation" within the meaning of

the arbitration clause. It also urges that the provision should be construed against the drafter, the owner, and liberally under the federal arbitration statute to encompass coverage.

We find that the issue of liquidated damages is not within the scope of the arbitration clause. The limitation provision[2] states: "The arbitrator or board of arbitration shall have authority only to pass upon questions involving compensation to the contractor for work actually performed but not allowed by the engineer." Neither liquidated damages nor extension of time involves "work actually performed but not allowed" as that phrase is used in the contract. The work was allowed; it was the time extension which was not allowed. Turning to the scope of the provision, we find that extensions of time and liquidated damages are not issues involving "the amount of [or] rate of settlement or liability of the owner for an amount other than as shown by the estimates of the Engineer." The "amount of [or] rate of settlement" refers to the monthly progress payments approved by the engineer. Moreover, liquidated damage is not a liability of the owner; it is a liability of the contractor. The engineer approved the work done but *set off* the liquidated damages.

Even construing the clause liberally and against the owner, we hold that this arbitration clause is not applicable to a question of the correctness of the denial of an extension of time or the assessment of liquidated damages. While federal cases interpreting the federal statute require that it be construed liberally, they do not require a party to submit to arbitration any dispute which he has not agreed to so submit. Atkinson v. Sinclair Refining Co., 370 U. S. 238, 241 (82 SC 1318, 8 LE2d 462) (1962); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U. S. 574, 582 (80 SC 1347, 4 LE2d 1409) (1960). The parties here did not agree to submit the extension of time or the assessment of liquidated damages to arbitration.

The amount of $5,116.15 for repair of a belt may be subject to arbitration. The limitation clause states that

---

[2]See fn. 1.

the arbitrator shall not determine "the qualities of materials or workmanship furnished." According to the owner, the belt was improperly installed and thus this issue would not be subject to arbitration. However, the contractor contends that the owner improperly used the belt and thus this issue is within the scope of arbitration as a "liability of the owner for an amount other than as shown by the estimate approved by the Engineer." The complaint therefore stated a claim for relief as to this issue.

Finally the contractor urges that the owner waived any right to object to arbitration of liquidated damages because the city engineer appointed an arbitrator and thus participated in the arbitration procedure. The city engineer cannot waive the city's right to object to the submission of matters to arbitration which were not contemplated by the arbitration clause. *Richmond County v. Pierce,* 234 Ga. 274 (215 SE2d 665) (1975); Code Ann. § 89-903.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Ingram, J., who concurs in the judgment only.*

ARGUED MAY 10, 1976 — DECIDED SEPTEMBER 7, 1976 — REHEARING DENIED SEPTEMBER 28, 1976.

*Jay M. Sawilowsky,* for appellant.
*Samuel F. Maguire,* for appellees.