**ASSOCIATED MECHANICAL CORPORATION, INC., Plaintiff,**

v.

**MARTIN K. EBY CONSTRUCTION COMPANY, INC., Defendant.**

**No. 5:95–CV–94–3 (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Sept. 29, 1999.

See also, 983 F.Supp. 1121.

John Flanders Kennedy, Macon, GA, David R. Hendrick, Victoria H. Tobin, Atlanta, GA, for Associated Mechanical Contractors, Inc., plaintiff.

Wallace Warren Plowden, Jr., Macon, GA, George D. Wenick, Mr., Atlanta, GA, for Martin K. Eby Construction Company, Inc., defendant.

## ORDER

OWENS, District Judge.

Defendant Martin K. Eby Construction Company, Inc. ("Eby") has filed a motion for summary judgment on plaintiff Associated Mechanical Contractors, Inc.'s ("AMC") claims for final contract payment and pre-judgment interest on such payment. While Eby argued in its briefs that it was not obligated to pay AMC the final amount ("retainage") because of unsatisfied conditions precedent, Eby has now paid a portion of the amount making this issue moot. However, the issues of whether the remaining portion of the principal is due and whether pre-judgment interest on the entire final payment is due remain. Having carefully considered the motion, the related caselaw and statutes, and the file as a whole, the Court enters the following order.

### I. Background

This action arises from the construction of the Dooley Correctional Institution ("Project") for the Georgia Building Authority ("Owner"). Eby was the prime contractor on the Project, and entered into a subcontract ("Subcontract") with AMC. AMC was to perform certain mechanical and related work for the Project under the Subcontract. AMC began its work shortly after January 29, 1990, and had completed its work by the end of 1992.

This Court has previously denied all of AMC's claims by partial summary judgment, except AMC's claim for final payment and interest.

At the time of filing this motion Eby had paid AMC the full Subcontract amount, except for AMC's final payment, known as retainage. Eby claimed that the retainage payment was not yet due under the Subcontract, because the Owner was still withholding it from Eby. Eby claimed that AMC's interest claim is the only matter remaining in dispute before the Court.

Section 14 of the Subcontract provides for final payment:

The retained percentage and/or final progress payment shall be paid to [AMC] after (1) the work performed by the Subcontractor is completed satisfactorily; (2) the Subcontractor has paid all of its creditors as to these obligations which arise from or related to Subcontractor's performance of this subcontract; (3) the Contractor has been paid by the Owner for the Work set forth in this Subcontract; (4) Subcontractor completes, executes, and files with the Contractor a release on the forms supplied by the Contractor; and (5) all disputes, claims, liens, causes of actions and/or lawsuits which are related in any way to this Subcontract or the Subcon-

tractor's performance of the Work are resolved.

*Subcontract* § 14.

Eby argued that three of these conditions had not been met when it filed its motion for summary judgment.

Eby argued that AMC's final payment was also subject to the provisions of Eby's contract with the Owner ("Prime Contract"). The Prime Contract provisions require Eby to provide an affidavit stating that there are no claims of any kind "which might constitute a lien upon the property of the Owner." *Prime Contract,* Articles E–28, E–32. They also permit the Owner to withhold payment if any claims are filed. *Id.,* Article E–26. AMC agreed to be bound by these provisions, and "to assume towards [Eby] all of the obligations and responsibilities which [Eby], by the Prime Contract, assumes towards the Owner...." *Subcontract,* § 1.

AMC filed its original complaint in this civil action on March 4, 1995. It sought only additional compensation by way of a claim for an equitable adjustment due to delays and disruptions experienced by AMC. A First Amended Complaint was filed by AMC on March 22, 1995, stating substantially the same claims for relief as the original complaint. Eby filed three separate motions for summary judgment, and this Court granted the "Third Motion for Summary Judgment," by Order entered on November 19, 1997, which effectively disposed of the AMC claim for equitable adjustment.

In July, 1999, after Eby filed this motion, AMC received $231,820.09 as payment for the unpaid balance. AMC claims that an unpaid balance of $23,943.28 still remains unpaid. AMC claims interest is due on the both amounts. AMC seeks interest on the $231,820.09 that accrued between the filing of its Second Amended Complaint on or about May 20, 1997, and the date of receipt of the $231,820.09 amount on or about July 9, 1997. AMC also seeks interest accruing on the remaining $23,943.28 yet unpaid.

## II. Discussion

### A. Issues Now Moot

The Court notes that at least partial payment on the Subcontract retainage has been paid to AMC. In July, 1999, $231,-820.09 was paid to AMC by Eby. Therefore, the Court finds that AMC's claim for payment of retainage principal is moot to the extent already paid by Eby.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *Federal Rules of Civil Procedure* 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995).

The evidence and all reasonable factual inferences arising from it must be viewed in the light most favorable to AMC, the non-moving party. *See Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). The movant's entitlement to judgment as a matter of law is satisfied where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in *Federal Rules of Civil Procedure* 56(c), genuine issues of material fact necessitating a trial. *Id.* at 324, 106 S.Ct. 2548.

### C. Conditions Precedent

Eby's motion for summary judgment focuses on the language of the Subcontract.

Eby contends that the Subcontract sets out at least three conditions precedent to payment which have not been met. Eby also argues that without having met these conditions for payment, no interest can be accrued against it.

■ A contractor is not liable and bound to pay a subcontractor until satisfaction of all conditions imposed by the subcontract. *See Peacock Constr. Co. v. West*, 111 Ga.App. 604, 142 S.E.2d 332 (1965); *Ga.Code Ann.* § 13–3–4 ("a condition precedent must be performed before the contract becomes absolute and obligatory upon the other party").

Georgia courts have found that no payment was due a subcontractor where a subcontract was conditioned on receipt of payment by the contractor from the owner. *See St. Paul Fire and Marine Ins. Co. v. Georgia Interstate Elec. Co.*, 187 Ga. App. 579, 370 S.E.2d 829 (1988); *Jerome Distributors, Inc. v. B.L.I. Constr. Co.*, 142 Ga.App. 776, 237 S.E.2d 13 (1977).

### 1. Subcontract Section 14(3)

■ Eby contends that the language of subsection three of Subcontract § 14 is a condition which has to have been met before payment is or was required to be made to AMC. The Subcontract states: "The retained percentage and/or final payment shall be paid to the subcontractor after ... (3) the Contractor has been paid by the Owner for the Work set forth in this Subcontract." *Subcontract* § 14. There is no material question of fact surrounding the issue of whether Eby has been paid by the Owner for the work performed under the Subcontract. The work, which was completed by the end of 1992, had not been paid for by the Owner to Eby until July 1999.

This Court finds that payment by the Owner to Eby was a condition precedent to payment of the amount owed to AMC. The language of the Subcontract required payment by the Owner before the Subcontract required Eby to pay AMC.

■ Georgia law provides that no payment is due a subcontractor where a subcontract was conditioned upon the receipt of payment by contractor from the owner. *See Peacock Const. Co.*, 142 S.E.2d at 333 (holding a pay-when-paid clause to be a condition precedent); *St. Paul Fire & Marine Ins. Co. v. Georgia Interstate Elec. Co.*, 187 Ga.App. 579, 370 S.E.2d 829, 830–31 (1988) ("A provision in a contract may make payment by the owner a condition precedent to a subcontractor's right to payment if 'the contract between the general contractor and the subcontractor should contain an express condition showing that to be the intention of the parties.' ... The condition is clearly expressed in this subcontract.") (*citing Sasser & Co. v. Griffin*, 133 Ga.App. 83, 210 S.E.2d 34 (1974); *Jerome Distributors v. B.L.I. Constr. Co.*, 142 Ga.App. 776, 237 S.E.2d 13 (1977); *D.I. Corbett Elec. v. Venture Constr.*, 140 Ga.App. 586, 231 S.E.2d 536 (1976)); *Jerome Distributors, Inc.*, 142 Ga. App. 776, 237 S.E.2d 13 (1977) (affirming the finding that a subcontract clause requiring final payment within 30 days after completion of the work covered by the subcontract, "written acceptance by the architect, and full payment by owner" was a condition precedent to payment). Here, there was an express condition in the Subcontract similar to that in *St. Paul Fire & Marine Ins. Co.*

This Court disagrees with AMC's characterization of *Peacock Constr. Co's* "pay-when-paid" language as *dictum.* The court in *Peacock Constr. Co.* rejected the plaintiff's argument that the contract in that case merely expressed the time when payment should be made[1] and found that "as [it] construed the plain and unambiguous language of the agreement, there are clearly expressed conditions precedent to defendants' liability for the final payment of the contract price." *Peacock Const. Co.*, 142 S.E.2d at 333.

---

**1.** This disposes of AMC's argument that the conditions enumerated in § 14 merely provide for timing of payment and are not absolute conditions precedent of payment.

This Court also rejects the plaintiff's invitation to join the "majority rule" holding that this type of clause does not establish a condition precedent. Georgia law applies to this case. *See Technical Coating Applicators, Inc. v. United States Fidelity & Guaranty Co.*, 157 F.3d 843, 844 (11th Cir.1998) (holding that "[i]n a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result").

### 2. Subcontract Section 14(4)

■ The Subcontract requires that AMC complete, execute, and file a release of Eby before payment is to be made. The Subcontract provides that payment shall be withheld until: "(4) Subcontractor completes, executes, and files with the Contractor a release on the forms supplied by the Contractor." *Subcontract* § 14. Eby claims that until AMC files such a release, payment is not yet due.

This Court disagrees with AMC's contention that this language does not establish a clear and unambiguous showing of an intention to create a condition precedent for payment by the contractor. As noted above, Georgia courts have viewed these clauses as conditions precedent, and not merely timing devices. *Cf. Peacock Constr. Co.*, 142 S.E.2d at 333. This Court finds that the language clearly and unambiguously establishes the intent to create a condition precedent to payment. Therefore, this Court finds that subsection four of § 14 was a condition precedent to payment.

### 3. Subcontract Section 14(5)

■ The Subcontract provides that the Subcontractor will be paid after: "(5) all disputes, claims, liens, causes of actions and/or lawsuits which are related in any way to this Subcontract or the Subcontractor's performance of the Work are resolved." *Subcontract* § 14.

In *Shepherd Constr. Co. v. State Highway Dept.*, 138 Ga.App. 252, 226 S.E.2d 79,

80 (1976), the Georgia Court of Appeals found a condition precedent due to a clause stating final payment was not due until "(a) the treasurer receives the final release properly executed by the contractors; . . . (c) [t]he amount due has been resolved by arbitration; or (d) [t]he total amount due has been fixed by a court of proper authority." *Id.* AMC argues that "Condition 5" is not a condition precedent because it is not clear and unambiguous in showing intent to create a condition precedent. AMC also argues it is only a timing device.

This court once again disagrees with AMC's characterizations, and finds this is a condition precedent. This Court finds a clear and unambiguous showing of an intention to create a condition precedent for payment by the contractor. As noted above, Georgia courts have viewed these clauses as conditions precedent, and not merely timing devices. *Cf. Peacock Constr. Co.*, 142 S.E.2d at 333.

While AMC is correct in noting that there is no arbitration provision in its subcontract with Eby, that does not stop this court from finding that Condition 5 is a condition precedent. The fact that this condition is different from the one in *Shepherd Construction* does not mean Condition 5 is not a condition precedent to payment.

### 4. Incorporated Prime Contract Conditions

The Subcontract incorporates provisions concerning final payment that are in the Prime Contract. The Prime Contract requires, that before final payment is made, Eby must provide an affidavit stating that there are no claims of any kind "which might constitute a lien upon the property of the Owner." *Prime Contract*, Articles E–28, E–32. The contract also permits the Owner to withhold payment if any claims are filed. *Id.* Article E–26. AMC admits that Eby may have had the "right . . . to continue withholding AMC's retainage payment" under this language. *See Plaintiff's Brief in Opposition To Defendant's*

*Fourth Motion For Summary Judgment* ("Plaintiff's Brief") at 18.

### D. Application

#### 1. Principal

■ This court has already noted, above, that Eby paid AMC $231,820.09 towards the amount of principal that had been left unpaid. AMC described this as a partial release and payment of the total unpaid subcontract balance due. *See* Plaintiff, AMC's Final Response To Defendant, Eby's Reply Brief Regarding Defendant's Fourth Motion For Summary Judgment at 1. Therefore, as noted above, AMC's claim for this retainage principal is moot as much as it pertains to this amount.

AMC claims that an unpaid balance of $23,943.28 still remains unpaid representing what it describes as the remainder of the unpaid principal under the Subcontract. Eby, when addressing the issue of principal, argued that it did not owe the full amount claimed by AMC, but only $231,820.02.[2] *See Memorandum in Support of Defendant's Motion For Summary Judgment* at 5–6.

In its Memorandum in Support of Motion for Summary Judgment, Eby argued that it did not owe the addition $23,943.35 because that was Eby's cost to correct AMC's defective work. *See Memorandum in Support of Defendant's Motion For Summary Judgment* at 6 n. 1. When viewing the facts in a light most favorable to the non-moving party, the Court finds that a material issue of fact exists regarding the unpaid principal balance. The Court cannot grant Eby's motion for summary judgment on this issue.

#### 2. Prejudgment Interest

■ Under Georgia law, prejudgment interest accrues "from the time the party shall become liable and bound to pay" the sum recovered. *Ga.Code Ann.* § 7–4–15. Under contract claims, the prejudgment interest does not accrue unless and until all contractual conditions are satisfied, because until then no payment is due. *See*

*B.G. Sanders & Assoc., Inc. v. Castellow,* 154 Ga.App. 433, 268 S.E.2d 695, 697 (1980) ("[w]hen the existence of a debt is conditional on the happening of some event, payment cannot be enforced until that event happens").

Although AMC's claim on the retainage principal total $231,802.09 is moot, its claim for prejudgment interest is not, as interest was not paid to AMC. Therefore, the Court must determine whether the conditions precedent were met.

#### a. Principal Already Paid

This court has already found that there were conditions precedent to Eby's duty to pay AMC arising under the Subcontract. It now looks to see if these conditions had been met at the time AMC claims it should have been paid under the Subcontract.

Subcontract § 14(3) required payment by the Owner before a duty to pay AMC arose. *See Subcontract* § 14. This payment was not made until July 1999. Georgia law provides that a contractor is not liable and bound to pay a subcontractor until satisfaction of all conditions imposed by the subcontract. *See Peacock Constr. Co. v. West,* 111 Ga.App. 604, 142 S.E.2d 332 (1965); *Ga.Code Ann.* § 13–3–4 ("a condition precedent must be performed before the contract becomes absolute and obligatory upon the other party").

AMC argues that Eby's conduct estops it from asserting the non-performance of condition 3 in defense of AMC's claim for payment of the Subcontract balance. AMC argues that implicit in the terms of § 14 of the Subcontract is a duty on Eby's part to actively and aggressively pursue release of payments under the Prime Contract which correspond to any liabilities owed by Eby to AMC under the Subcontract.

AMC argues that under Georgia law, "where a defendant prevents the performance of a stipulation of a contract undertaken by the plaintiff, he is estopped from

2. Eby paid $231,820.09.

setting up in his own behalf any injury which may have resulted from the nonperformance of such condition." *Allied Enterprises, Inc. v. Brooks,* 93 Ga.App. 832, 834, 93 S.E.2d 392, 398 (1956) (quoting from *Stimpson Computing Scale Company v. Taylor,* 4 Ga.App. 567, 61 S.E. 1131, 1132 (1908)); *PHL Development Corporation, Inc. v. Sammy Garrison Construction, Inc.,* 171 Ga.App. 393, 319 S.E.2d 543 (1984). A contractual condition will be excused where the other party to the contract "by his own act rendered it impossible" for the claiming party to satisfy such condition. *See M.C. Anderson v. Golden,* 569 F.Supp. 122, 139 (S.D.Ga.1982); *see also CRS Sirrine, Inc. v. Dravo Corp.,* 219 Ga.App. 301, 304, 464 S.E.2d 897, 900 (1995); *Traveler's Indemnity Company v. West Georgia National Bank,* 387 F.Supp. 1090 (N.D.Ga.1974).

The Court distinguishes these cases by noting that the condition precedent in this case is not to be performed by AMC. AMC could never satisfy this condition as it was not in privity with Eby under the Prime Contract.

■ While this Court is mindful of the time it took for AMC to recover payment from Eby, it still must look to the plain language of the contract. This Court finds guidance in *Peacock Construction,* where the court, interpreted a similar "pay-when-paid" clause. The court found that the "pay-when-paid" clause could be a condition precedent. *See Peacock Constr.,* 142 S.E.2d at 334. The court noted: the "possibility of the owner's nonpayment on account of [the subcontractor's] work in the construction is the subcontractor's risk rather than that of the prime contractor and that the owner's payment to the prime contractor for the subconractor's [sic] work is yet another condition precedent to [the prime contractor's] liability ...." *Id.* The Court finds that the condition in § 14(3) was not met.

Eby claims that a release was never filed by AMC on forms supplied by Eby. AMC claims that, early in 1997, it provided a "fully executed release on the only form provided by the Defendant." *Plaintiff's Brief* at 16. There appears to be a material issue of fact regarding this release, and therefore the Court cannot state that as a matter law, when viewed in a light most favorable to the non-moving party, the condition precedent in § 14(4) of the Subcontract was met.

Subcontract § 14(5) provides that a duty arose to pay AMC only after "all disputes, claims, liens, causes of actions and/or lawsuits which are related in any way to this Subcontract or the Subcontract's performance of the Work are resolved." *Subcontract* § 14(5). The presence of this action before this courts leads it to believe that the condition precedent in subsection five has not been met yet. *See Shepherd Construction Co. v. State Highway Dept.,* 138 Ga.App. 252, 226 S.E.2d 79, 80 (1976) (holding no interest due on a disputed contract until the trial court's judgment determined the amount of retainage due). AMC argues that it would never be able to demand payment if it were not allowed to assert claims under the condition in § 14(5). This is not so. No payment is due under the Subcontract until the conditions precedent have been met. *See Ga. Code Ann.* § 13–3–4. If all conditions precedent were satisfied, payment would become due, and then Eby would be required to pay AMC in a reasonable time. *See MacLeod v. Belvedale, Inc.,* 115 Ga.App. 444, 154 S.E.2d 756, 759 (1967). The conditions were not met in this case.

Eby argues that it was unable to satisfy the Prime Contract requirements for payment because of AMC's lawsuit. AMC admits that "the Owner may have technically had the 'right ... to continue withholding AMC's retainage payment." Plaintiff's Brief at 8. AMC argues that Eby's conduct should estop it from liability to AMC for the unpaid retainage. *See id.* at 18. Eby was paid by the Owner, but the Court finds that by the terms of the Contract, Eby had not been able to satisfy the terms of the Prime Contract because of the suit by AMC.

**1382**

Therefore based upon the fact that conditions precedent were not met, the Court finds that interest was not due on the retainage principal which has already been paid to AMC.

#### b. Unpaid Principal

Under Georgia law, prejudgment interest accrues "from the time the party shall become liable and bound to pay" the sum recovered. *Ga. Code Ann.* § 7–4–15. The Court found that summary judgment could not be granted on the claim for the remaining principal of $23,943.28 because there is a question as to whether the remaining principal is due AMC, the Court cannot grant Eby's motion for summary judgment on the interest as it relates to the principal not yet paid AMC.

### *III. Conclusion*

The Court finds that the Plaintiff's claim for retainage principal against the Defendant is moot as to the amount of $231,820.09. Defendant's Motion for Summary Judgment [Tab #89] is **HEREBY GRANTED** as to the claim for prejudgment interest on the principal amount already paid by the Defendant ($231,820.09). Defendant's Motion for Summary Judgment is **HEREBY DENIED** as to the Plaintiff's claim for the remaining unpaid principal and for the prejudgment interest arising from the unpaid principal.